IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TROY THOELE,<br>Plaintiff,<br><br>v.<br><br>BILLY LEWIS;<br>JAMES JONES;<br>DARRON LANE;<br>MICHAEL PROCTOR;<br>JASON LIGHTSEY;<br>SCOTT BAILEY;<br>ALETICIA GLASGOW;<br>CANDACE PACE;<br>in the official capacity,<br>Plaintiffs. | Case No. ____________<br><br>JURY TRIAL DEMANDED |

United States Courts
Southern District of Texas
FILED
OCT 15 2019
David J. Bradley, Clerk of Court

United States Courts
Southern District of Texas
FILED
OCT 15 2019
David J. Bradley, Clerk of Court

CIVIL RIGHTS COMPLAINT

JURISDICTION

This is a civil rights complaint made pursuant to 42 U.S.C. §1983. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and §1343(a). This court may provide declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

VENUE

At all pertinent times the Plaintiff was incarcerated at the Huntsville Unit in the City of Huntsville, Walker County, Texas, 77340, where the events giving cause to this action occurred and this Court is the appropriate venue pursuant to 28 U.S.C. §1391 §123(b)(1).

EXHAUSTION

The Plaintiff has exhausted all administrative remedies

by utilizing the Texas Department of Criminal Justice grievance system. Grievance numbers are noted within each claim.

## STATEMENT OF PREVIOUS LITIGATION

Plaintiff's previous state and federal litigation is listed in attachment A, incorporated herein.

## PARTIES

Plaintiff is Troy Thoele, TDCJ #1784662, and is currently confined at the Huntsville Unit, 815 12th Street, Huntsville, Texas, 77340.

Defendant Billy Lewis is Senior Warden at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Lewis implimented policies or customs for excessive heat conditions, abuse of the disciplinary process, retaliation, violations of equal protection, and a classification system that places non-violent inmates at risk.

Defendant James Jones is former Senior Warden at the Huntsville Unit. Address for service is unknown. Defendant Jones implimented policies or customs for excessive heat conditions.

Defendant Darron Lane is Major at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Lane carried out abuses of the disciplinary system and retaliation for Plaintiff's excercise of the grievance system and litigation against the Huntsville Unit.

Defendant Michael Proctor is a Captain at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Proctor carried out abuses of the disciplnary system.

Defendant Jason Lightsey is a Captain at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Lightsey carried out retaliation for Plaintiff's excercise

of the grievance system, abuses of pre-hearing detention, and abuses of the disciplinary system.

Defendant Scott Bailey is former Lieutennant (now a corrections officer) at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Bailey denied Plaintiff adequate medical attention while acting as a shift supervisor.

Defendant Aleticia Glasgow is a Corrections Officer at the Huntsville Unit and may be served at the Huntsville Unit, 815 12th Street, Huntsville, Texas, 77340. Defendant Glasgow carried out abuses of the disciplinary system and retaliation for Plaintiff's excercise of the grievance system.

Defendant Candace Pace is Counsel Substitute at the Huntsville Unit and may be served at 815 12th Street, Huntsville, Texas, 77340. Defendant Pace carried out abuses of the disciplinary system.

## STATEMENT OF THE CLAIMS

### HEAT AND DENIAL OF MEDICAL ATTENTION

1. On June 24, 2018 Plaintiff started experiencing severe chest pains at approximately 10:30PM. During this time, Plaintiff's heartbeat became irregular. Plaintiff was conscious and moving around, but apparently unresponsive to his cellmate. Plaintiff's cellmate called for help. Seargent Pimentel responded, and stated a nurse would be called out. Plaintiff was placed in the "bullpen" (which is air conditioned). Plaintiff was left there for an hour and a half to two hours, and repeatedly asked Defendant Bailey when Plaintiff would recieve medical attention. Defendant Bailey was busy with unit count.

2. After unit count was complete, Defendant Bailey took Plaintiff to medical, and attempted to work a blood pressure machine to take Plaintiff's blood pressure. By then, Plaintiff's irregular heartbeat had stopped, and the blood pressure was normal, although an elevated heartrate was noted. Plaintiff was then

ordered to return to the cell block and was told if it got worse, let somebody know. At no point in time was Plaintiff's temperature taken, and medical attention was not provided by any medical professionals.

3. Plaintiff was seen by medical the next day and an EKG was performed. Plaintiff has high blood pressure, and a history of heart problems.

4. Plaintiff submitted a grievance regarding the denial of medical care. Defendant Jones responded that Defendant Bailey denied the allegation that Plaintiff had asked for medical attention, and subsequently classified this incident as heat-related.

5. Defendant Bailey denied medical care and access to medical professionals, showing deliberate indifference to Plaintiff's serious medical needs. Even if the incident was heat-related or heat was a factor, medical attention should have been provided. Defendant Bailey was to follow Texas Department of Criminal Justice ("TDCJ") protocols, as corrections officers are not trained for medical care or medical emergencies. This necessarily includes heat related injuries.

6. Heat was a determining factor in this incident. The conditions on the Huntsville Unit violate the Eighth Amendment of the United States Constitution, constituting cruel and unusual punishment in the form of excessive heat.

7. Defendant Jones has objective awareness of the unconstitutional heat and inadequate after-hours medical care through the death of Michael Martone, an inmate confined on the Huntsville Unit, who died from heat related injuries in 2011. At that time, Defendant Jones was acting as Senior Warden.

8. Defendant Lewis has continued to be deliberately indifferent to the excessive heat on the Huntsville Unit by failing to provide any form of mechanical cooling or even "cool-down" showers as provided for in the TDCJ heat policy.

9. The administrative remedies was exhausted by utilizing the TDCJ grievance system, see grievance #2018161100.

## Disciplinary Due Process

10. On July 20, 2019 Plaintiff was involved in an incident with Defendant Glasgow. This was the result of Defendant Glasgow failing to conduct a "door roll" in accordance with policy, placing inmates at risk of injury by failing to announce door movement. Additionally, Defendant Glasgow intentionally closed the cell doors to leave Plaintiff "stuck out" of his cell. When confronted, Defendant Glasgow responded in a hostile and abusive manner, using profanity. Defendant Glasgow is well-known for this behavior, and has been the subject of previous grievances from other inmates.

11. Plaintiff asked to speak to a ranking officer, required as part of the informal resolution prior to submitting a formal grievance. Defendant Glasgow denied Plaintiff's request to speak with a ranking officer, which has also been the subject of grievances from other inmates. Plaintiff informed Defendant Glasgow that Plaintiff would speak to a ranking officer, and proceeded to a telephone. At approximately 11:15AM Plaintiff placed his first call to his family, at which time Defendant Glasgow left without any further statements.

12. During this call, Plaintiff requested his mother, Mrs. Dianne Johnson, to call back on the Huntsville Unit and speak with a captain regarding a problem Plaintiff was having with an officer. Plaintiff stated he would call back in approximately ten minutes.

13. Approximately 15 minutes later at 11:30AM, Plaintiff called back. Mrs. Johnson stated she had spoken with Defendant Lightsey, and he would call Plaintiff out. During this conversation, a Seargent appeared at the cell block. Plaintiff terminated the conversation with "I have to go."

14. Sgt. Ladnier stated Defendant Glasgow had made an allegation that Plaintiff had threatened her. The alleged statement was "don't worry, I got something for you." Plaintiff was placed

in handcuffs and taken to the Captain's office.

15. Defendant Lightsey stated he had spoken with Mrs. Johnson, and also repeated the alleged "threat." At that point, he ordered Plaintiff placed in "prehearing detention." On July 22, 2019, Thoele was served with disciplinary #20190281797, with Defendant Glasgow as the charging officer and the alleged threat restated. Most importantly, the time of the alleged "threat" was at 11:50AM.

16. On July 24, 2019 a disciplinary hearing was attempted to be held. At that time, Defendant Pace indicated that the phone calls and the time information would be available for the disciplinary proceedings. It was claimed though that Defendant Glasgow could not be contacted, and Plaintiff was sent back.

17. On July 30, 2019 Plaintiff was released from prehearing detention, as TDCJ policy limits the time to ten days, unless written approval is secured from the warden for an additional ten days. TDCJ policy also requires a hearing to be held within 72 hours of an incident when an inmate is removed from general population, although it may be held up to 30 days. Plaintiff spent the full ten days in prehearing detention.

18. On August 6, 2019 (a week after Plaintiff was released from prehearing detention) Plaintiff was called out for the major disciplinary hearing, presided by Defendant Proctor. Sgt. Ladnier was called as a witness for Plaintiff. Defendant Glasgow was questioned about the "threat", and ask what specific harm was allegedly stated. Defendant Glasgow testified that no other statement was made, but she "felt" threatened. Defendant Glasgow also testified that Plaintiff was generally hostile, although Ladnier's testimony directly refutes these statements. The timing of the phone calls was entered into evidence, but it was claimed the Huntsville Unit did not have the capabilities to play the audio recording from the telephone calls. All phone calls from the Offender Telephone System (OTS) are recorded.

19. Plaintiff was found guilty by Defendant Proctor despite the evidence presented, dropped two line classes, and assessed punishment of 30 days restrictions. The hearing was concluded.

20. TDCJ's disciplinary policy (GR-106) complies with the requirements of due process on paper, yet officials involved do not follow these procedures. Many of these procedures are outlined by the United States Supreme Court, including the right to present evidence and assistance of counsel substitute. This also includes the right to a prompt hearing.

21. TDCJ abolished solitary confinement as a form of punishment for major disciplinary actions. This is not acceptable to Defendants Lewis and Lightsey, and a practice or custom of abusing prehearing detention exists on the Huntsville Unit. The majority of inmates confined to prehearing detention go past the 72 hour limit imposed by policy, but not past the ten day limit. This constitutes a punishment without a hearing, as evidenced by Plaintiff's confinement.

22. Defendant Pace's primary duty is to act as an advocate for inmates accused of major disciplinary infractions. This includes gathering witness statements and evidence, something an inmate confined to prehearing detention cannot do. At all times during Plaintiff's proceedings though, Defendant Pace acted in bad faith, and represented the interests of TDCJ, not the Plaintiff. Plaintiff subsequently chose to represent himself as a result of Defendant Pace's bad faith.

23. Defendant Pace claimed the Huntsville Unit did not have the ability to play a telephone call at the disciplinary hearing. A number of officials have access to the OTS system, including the ability to play a phone call from a computer. Plaintiff is aware of a previous disciplinary in which a telephone call was played, involving an incident with a parole officer assigned to the unit. Defendant Pace simply denied Plaintiff crucial evidence.

24. Defendant Pace claimed the records were accessed prior to the first attempted hearing. TDCJ records should show this is not true, and Defendant Pace intentionally delayed the investigation with the intent to leave Plaintiff confined to prehearing detention.

25. The disciplinary rules required the preliminary investigation to be conducted by an officer without knowledge of the disciplinary. During the course of this incident, Plaintiff only spoke with

Defendant Glasgow (during the original incident), Defendant Lightsey, and Sgt. Ladnier. At no point in time prior to the disciplinary being served did Plaintiff speak with any other officer regarding this incident. This violated TDCJ's own policy, and denied due process in the preliminary investigation phase. Huntsville Unit staff and officials refuse to release the name of the officer claiming to have conducted the preliminary investigation. Plaintiff reserves the right to amend this issue and potentially add a defendant pending disclosure.

26. Sgt. Ladnier's testimony also refutes Defendant Glasgow's alleged time of the incident, 11:50AM. Ladnier testified that Plaintiff was either on the phone, or had just got off the phone when he arrived at the cell block. Phone records confirm this was at approximately 11:30AM, and Defendant Glasgow had already made the allegation. Per TDCJ policy, the disciplinary report is not "true" or "correct", the time is wrong.

27. TDCJ's disciplinary policy also requires the disciplinary hearing officer (Defendant Proctor) to address the "non-frivolous" evidence presented, and if such evidence is presented, the officer's statement and testimony cannot be the sole basis for guilt. Defendant Proctor denied due process by not addressing the non-frivolous evidence (the time is wrong, conflicting testomony about Plaintiff's demeanor), and finding guilt solely on the officer's testimony and statement.

28. The administrative remedies was exhausted by utilizing the TDCJ grievance system, see grievance #2019167642.

## Retaliation for Utilizing the Grievance System

29. Speaking to a ranking officer is part of the informal resolution process, required before filing a grievance. As such, this is a Constitutionally protected action.

30. Defendant Glasgow's timing of the event is clear. Plaintiff attempted an informal resolution, and only then did Defendant Glasgow make the allegation. Evidence shows Plaintiff placing

a call first after Defendant Glasgow denied Plaintiff's request to speak with a ranking officer, then Defendant Glasgow made the false allegation. This chronology of events shows the retaliatory motive on the part of Defendant Glasgow, the false disciplinary and the associated 30 days cell restriction and loss of priviledges shows an adverse act, and the causation is shown by the direct link between Plaintiff's complaints to ranking officers and the punishment imposed from the false disciplinary.

31. Defendant Glasgow was questioned during the disciplinary hearing and was asked if there were any witnesses to the alleged threat. Defendant Glasgow testified there was one other officer and a number of inmates present, but no additional witness statements or testimony was presented. In short, there is no additional evidence to substantiate Defendant Glasgow's alleged "threat."

32. Defendant Lightsey's ordering Plaintiff to prehearing detention shows an intent to retaliate for Plaintiff's family calling on the unit. The removal from population and confinement to prehearing detention and the urging of Defendant Glasgow to write the disciplinary shows a retaliatory adverse action, and Defendant Lightsey submitting the false disciplinary to be processed and heard and the subsequent punishment imposed shows a direct link between Plaintiff's complaints to Defendant Lightsey and the punishment imposed from the false disciplinary.

33. The intent from Defendant Glasgow is to deter Plaintiff and other inmates from speaking with ranking officers, and was designed to chill a person of ordinary firmness. The intent from Defendant Lightsey is to deter Plaintiff and other inmates from having members of their families speak with ranking officers, and was also designed to chill a person of ordinary firmness.

34. Defendant Lewis has put in place practices to support retaliation against inmates for utilizing the grievance system. Evidence shows that on July 28, 2019 Plaintiff wrote Defendant Lewis a letter with the subject line of "retaliation", outlining these events. Defendant Lewis never responded and never intervened

with the false disciplinary action. In addition, Plaintiff submitted a Step 1 grievance, #2019167638, in regards to the retaliation. The signature authority on this grievance was Defendant Lewis, and the grievance was misclassified and disregarded the retaliation claims.

35. The administrative remedies was exhausted by utilizing the TDCJ grievance system, see grievance #2019167638.

**Retaliation for Litigation**

36. Plaintiff filed suit against the Texas Department of Criminal Justice on March 8, 2018 for lung damage sustained as a result of forced labor at the Huntsville Unit Textile Mill. See Walker County cause number 1828674, 12th District Court, the Honorable Donald Kraemer presiding. Citation was issued through the Texas Secretary of State on March 12, 2018. On the same day, Plaintiff filed for a restraining order against TDCJ and their attorneys related to medical records privacy. The restraining order was granted ex parte, and a Temporary Injunction hearing was set for March 28, 2018. A hearing was held in which the Plaintiff was bench warranted by the court to appear in person, and the temporary injunction was granted. TDCJ subsequently took an interlocutory appeal. TDCJ filed a motion to dismiss, which was granted by the trial court on June 18, 2018. Plaintiff perfected appeal, and an appeal has been pending with the Tenth Court of Appeals in Waco since. See Appeal no 10-18-00249.

37. On January 10, 2019 Plaintiff was placed on "L Line" in OPI (pending investigation) for an incident with his then cellmate. At that time, Plaintiff's property was "inventoried" by Huntsville Unit officers, although no paperwork was ever presented, in violation of TDCJ policy. Plaintiff alerted officers after the property was delivered some hours later. The next day, Plaintiff spoke with Lieutennant Kukula regarding property, most importantly legal material, which is not supposed to be confiscated by TDCJ. Plaintiff followed up this conversation in a letter on January

10, 2019. Plaintiff was released on January 16, 2019, and wrote another follow-up letter to Lt. Kukula on January 18, 2019. Having no response, Plaintiff submitted a Step 1 grievance regarding this incident. A few days later, Defendant Lane called Plaintiff out regarding this grievance and attempted a property settlement. During the course of this conversation, Defendant Lane stated "I don't see any reason for you to stay on this unit", signalling an intent to have Plaintiff transferred to a different unit. This conversation was witnessed by Captain Luedke, although TDCJ customs is for fellow officers to deny such allegations.

38. Defendant Lewis authorized a search of Plaintiff's legal material. This search was conducted by Hooper (Access to Courts for the Huntsville Unit) and Ramos (Property Officer for the Huntsville Unit). During the course of this search, Plaintiff's claim was substantiated. An access to courts violation was noted, and TDCJ contacted the State of Texas Attorney General's Office to replace the substantiated missing legal material on March 29, 2019.

39. Plaintiff has been assigned to the Huntsville Unit for over six and a half years with only one other major disciplinary on his record back in 2015. With major disciplinaries, inmates face a change in custody status. On August 8, 2019 (two days after the disciplinary was held and Plaintiff was found guilty) Plaintiff was called to Unit Classification Committee (UCC), presided by Defendant Lane. TDCJ policy requires the presiding member to vote last. Instead, Defendant Lane questioned Plaintiff about the incident, stated the computer recommended "G4", then stated "I vote G4", looked left, looked right, and without anyone else saying anything, stated "You're G4'd." Present in the room was Lieutennant Austin, Scott (from classfication), and Seargent Juarez, as well as one other unidentified person.

40. Another inmate, Michael Jones, was "G4'd" in a UCC hearing just prior to Plaintiff's. Jones confirmed that his "hearing" was conducted in the same manner, in violation of TDCJ policy. Plaintiff's investigation reveals this is a normal course of

practice for Defendant Lane.

41. Defendant Lane had a number of "use of force" incidents when he was first assigned to the Huntsville Unit. His abusive and hostile manner towards inmates (including the use of profanity) has been stated by many other inmates, and may be the subject of a number of grievances.

42. The G4 status necessarily includes a transfer to an inferior or more dangerous prison, as the Huntsville Unit does not house G4 custody level inmates. Under the direction of Defendant Lewis, the G4 process for major disciplinaries is a mechanism utilized to transfer inmates the Huntsville Unit could not transfer otherwise. State Classification Committee (SCC) has final authority, and has overturned a number of G4 cases from the Huntsville Unit, finding the change in custody level was unwarranted.

43. Plaintiff excercised his constitutional right to access to courts through his lawsuit against the unit. Additionally, Plaintiff has a constitutional right to maintain possession of his legal material.

44. Defendant Lane stated his intent to retaliate against Plaintiff for excercise of this right, as the statement was made during the course of the investigation of the grievance. The retaliatory act was the change in custody level to G4, which necessarily includes a prison transfer. Causation is shown by the abnormal reaction to the offense (threatening an officer, Code 4.0 in TDCJ's pleadings handbook), where other similarly situated inmates with worse disciplinary records and a similar alleged statement were allowed to remain G2. (See "equal protection").

45. Defendant Lewis has put in place practices to support this retaliation. Routine monitoring of the UCC process is not conducted, and officers are discouraged from reporting such abuses. Plaintiff highlighted this in the same grievance listed for the previous claim (#2019167638), in which Defendant Lewis was the signature authority.

46. The G4 status is reserved for inmates that pose some

sort of legitimate threat. Prehearing detention is reserved for the same class of threat, or to preserve an investigation. Records will indicate Plaintiff was released from prehearing detention for a week. Records will also indicate Defendant Glasgow was duty posted in the same building Plaintiff was released to, indicating Defendant Lane and Defendant Lewis does not perceive the threat to be "substantial." Defendant Lewis still upheld the G4 status imposed by Defendant Lane in his official response on the grievance.

47. Defendant Lewis showed an intent to retaliate against Plaintiff for the lawsuit, and the successful grievance, by not granting a 10 day extension to leave Plaintiff in prehearing detention (perceiving an actual threat) yet supporting the retaliatory prison transfer. The adverse retaliatory act is the prison transfer.

48. Causation for Defendant Lewis is shown by Plaintiff's history and a chronology of events. Plaintiff has been assigned to the Huntsville Unit for over six and a half years, with only one major disciplinary in 2015, as stated before. The litigation began in 2018, and Defendant Lewis became Senior Warden some time in late 2018. In early 2019 Defendant Lewis was involved with the incident with Plaintiff's legal material. This was settled in March 2019. Not but five months later, Defendant Lewis upholds the retaliatory transfer.

49. The administrative remedies was exhausted by utilizing the TDCJ grievance system, see grievance #201916738.

Equal Protection

50. The Texas Department of Criminal Justice and formerly the Texas Department of Corrections ("TDC") has a long history of retaliating against inmates for excercising the right to access the courts. This class of inmates are commonly known as "writ writers" or "jailhouse lawyers", and the Plaintiff belongs to this class. Additionally, Plaintiff can be construed as a

"class of one."

51. Plaintiff was treated differently than two other inmates with the same offense (4.0 threatening an officer) that occurred in the few months prior. There may be more. These two inmates had a worse disciplinary record, yet were not transferred to a different prison and allowed to remain "G2". It should be noted that these two other inmates are black, and Plaintiff is white. These two other inmates do not have litigation against the Huntsville Unit, or have had a successful grievance.

52. This shows an intentional and different treatment by Defendant Lane and Defendant Lewis. This different treatment bears no rational basis to any penological interest when compared with the Defendant's response to other similarly situated inmates.

53. This equal protection claim was brought up in grievance #201916738 at both the Step 1 and Step 2 level. Defendant Lewis intentionally ignored this claim, see generally the response. The administrative remedies was exhausted by utilizing the TDCJ grievance system.

## Classification

54. Defendant Jones put into place a policy or custom of housing violent inmates with non-violent inmates in the same cell. Instead, the primary focus of Defendant Jones' classification policy is "in cell integration," which is mixing races within the same cell. This policy is evidenced by the "count room tags", which is a color-coded keychain on a pegboard that contains an inmate's basic information. The color of the keychain indicates the race of the inmate.

55. Defendant Lewis continues this policy or custom of housing violent inmates with non-violent inmates. The first week of November 2018 a violent, assaultive inmate was housed with Plaintiff. Despite repeated requests to two different captains, Plaintiff was left in the same cell. Without resolution, Plaintiff wrote Sharon Howell, TDCJ's general counsel. It appears her office

contacted the administration on the Huntsville Unit, and Lieutennant Austin handled the complaint. Hostile and combative, Lt. Austin had Plaintiff fill out some paperwork, and told Plaintiff what to say in the written statement. Plaintiff completed the statement in his own words, at which time Lt. Austin stated "I told you not to add anything else, do it again." Plaintiff was subsequently moved to a different cell.

56. Plaintiff filed a grievance, assigned grievance #2019048810. In the response, an incident from back in 2015 was referenced. The response stated in part "records reflect that you were seen by Unit Classification Committee on 4/30/15, for these same allegations, at which time the threat of violence was unsubstantiated and you received a housing assignment change."

57. On April 26, 2015 Plaintiff was assaulted by his then cellmate, Jamil Omari White, TDCJ #1760238. This required Plaintiff to be transported to the Huntsville Memorial Hospital, where Plaintiff recieved 6 stitches in his lip and 4 staples in the back of his head. Upon return to the Huntsville Unit, Plaintiff was placed in prehearing detention, and subsequently written Disciplinary #20150241717, alleging that Plaintiff "engaged in a fight by throwing closed fists." Punishment of cell restriction was imposed and Plaintiff saw Unit Classification Committee, thus the "housing change" to cell restriction.

58. grievance #2015137750 was submitted. The standard response was issued which is "no procedural errors were identified," "the punishment imposed was within the established guidelines," and "there appears to have been sufficient evidence to support a guilty verdict." The Step 2 response includes the same "canned" wording.

59. Plaintiff hired an attorney, Kory Robertson. Mr. Robertson issued an open records request, which includes a copy of the audio recording from the disciplinary. Upon review by Mr. Robertson, he concluded that the charging officer, Seargent Wilburn, never presented any evidence that Plaintiff "threw a closed fist." Indeed, Sgt. Wilburn was not even present, and had no personal

knowledge of the events.

60. Mr. Robinson contacted Amy Oliver, Region I Disciplinary Coordinator. On September 2, 2015 Ms. Oliver issued a letter that stated in part, "Upon review of your disciplinary case it was determined there was a lack of evidence to support the charge. No evidence that you participated in the fight was presented during the hearing." Ms. Oliver subsequently overturned the disciplinary and it was removed from Plaintiff's record.

61. Plaintiff subsequently filed suit in civil court against inmate white in the 12th Judicial District Court, Hal Ridley presiding. Judge Ridley found White liable for a civil assault and awarded damages of approximately $5,000.00. This directly refutes the claim that the "threat of violence was unsubstantiated", as a court of law has already determined that this incident was an assault. Note that this incident is presented to show a pattern of misconduct, and does not form the basis of this claim, as the statute of limitations has expired.

62. The Step 2 response states in part "Classification states you were housed properly. Offenders are housed per safe prisons according to age and weight and making sure the offenders are both not gang affilliated." This response clearly disregards the similar background or the practice of housing violent offenders with non-violent offenders, placing non-violent offenders (such as Plaintiff) at an unreasonable risk of harm.

63. Plaintiff belongs to a class of inmates, specifically non-violent offenders. Plaintiff can also be construed as a "class of one". Defendant Jones' policy or custom of housing non-violent offenders with violent offenders places non-violent offenders at risk, and serves no rational basis to control the risk of violence.

64. Defendant Lewis maintained a policy or custom of housing non-violent inmates with violent inmates, placing Plaintiff at risk. As evidenced from the grievance response, Defendant Lewis' classification policy ("safe prisons") does not take this into account, and specifically disregards this substantial risk, placing

a class of inmates and Plaintiff at risk to substantial harm. Such an incident happened to Plaintiff (resulting in transport to an emergency room), and thus is "substantiated."

## RELIEF

Plaintiff seeks declaratory and injunctive relief only, costs of suit, and attorney's fees if Plaintiff is represented by counsel at any point during this suit.

## SANCTIONS

Plaintiff has not been sanctioned by any court as a result of any lawsuit. Plaintiff has not been issued any warnings as a result of any lawsuit.

Plaintiff has one explicit strike for the purposes of the Prison Litigation Reform Act, issued by Judge Sam Sparks in Thoele v. Abbott, et. al., No. A-15-CA-997-SS. Plaintiff was declared a vexatious litigant in state court by Judge Dustin Howell in Thoele v. Texas Board of Pardons and Paroles, et. al., No. D-1-GN-18-007628, still pending as of this date.

## EXECUTION

Executed on this, the 3rd day of October, 2019.

Troy Thoele
Troy Thoele, Plaintiff, pro se

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current

mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an in forma pauperis lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this, the 3rd day of October, 2019

Troy Thoele

Troy Thoele, Plaintiff, pro se

Attachment A

Statement of Previous Litigation

**Federal Court:**

Approximate date of filing suit: November 2015
Parties to previous suit: Greg Abbott, Margie Johnson, Ross Behrens
Court: Western District of Texas
Cause Number: A-15-CA-997-SS
Name of Judge: Sam Sparks
Disposition: Dismissed with prejudice (time barred)
Date of Dismissal: December 2015

Approximate date of filing suit: July 2017
Parties to previous suit: Marc Hamlin, Travis Bryan III
Court: Southern District of Texas
Cause Number: 4:17-cv-02337
Name of Judge: Alfred Benett
Disposition: Dismissed with prejudice
Date of Dismissal: October 2017

**State Court:**

Approximate date of filing suit: March 2016
Parties to previous suit: James Jones, Gail Thompson, Debora Glaze
Court: 278th Judicial District, Walker County, Texas
Cause Number: 16-27-881
Name of Judge: Hal Ridley
Disposition: Dismissed with prejudice
Date of dismissal: July 2016

Approximate date of filing suit: June 2016
Parties to previous suit: in re: Grand Jury Subpoena Dueces Tecum Dated February 2, 2011
Court: 261st Judicial District, Travis County

Cause Number: D-1-GN-16-002961
Name of Judge: Laura Livingston
Disposition: dismissed without prejudice
Date of dismissal: September 2016

Approximate date of filing suit: January 2017
Parties to previous suit: Greg Abbott, Margie Johnson, Ross Behrens
Court: 261st Judicial District, Travis County
Cause Number: D-1-GN-17-000149
Name of Judge: Laura Livingston
Disposition: Dismissed with prejudice
Date of dismissal: June 2017

Approximate date of filing suit: March 2018
Parties to previous suit: Texas Department of Criminal Justice
Court: 12th Judicial District, Walker County
Cause Number: 1828674
Name of Judge: Donald Kraemer
Date of Dismissal: June 2018
Dispostition: Dismissed (not stated, without prejudice)

Approximate date of filing suit: November 2018
Parties to suit: Texas Board of Pardons and paroles
Court: 200th Judicial District, Travis County
Cause Number: D-1-GN-18-007628
Name of Judge: Dustin Howell
Disposition: Pending as of September 2019

Troy Thoele #1784662
Boyd Unit
200 Spur 113
Teague, TX 75860



TDCJ
APPROVED

United States Courts
Southern District of Texas
FILED

OCT 15 2019

David J. Bradley, Clerk of Court

United States District Court
Southern District of Texas
P.O. Box 691010
Houston, TX 77208-1010